UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SIGRID ANDREA FRENCH,<br><br>　　　　　　　　　　　　　Plaintiff,<br><br>v.<br><br>KILOLO KIJAKAZI, Acting Commissioner of Social Security,<br><br>　　　　　　　　　　　　　Defendant. | Case No.:  21-cv-0092-BLM<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>**[ECF NOs. 12, 15]** |

Plaintiff Sigrid French brought this action for judicial review of the Social Security Commissioner's ("Commissioner") denial of her application for Social Security Disability Insurance Benefits. ECF No. 1. Before the Court are Plaintiff's Motion for Summary Judgment [ECF No. 12-1 ("Mot.")], Defendant's Cross-Motion for Summary Judgment and Opposition to Plaintiff's motion [ECF No. 15 ("Oppo."), and Plaintiff's reply [ECF No. 16 ("Reply")].  For the reasons set forth below, Plaintiff's motion for summary judgment is **GRANTED** and Defendant's motion for summary judgment is **DENIED**.

## PROCEDURAL BACKGROUND

On August 22, 2018, Plaintiff filed a Title II application for a period of disability and

disability insurance benefits alleging disability beginning on September 1, 2015. See Administrative Record ("AR") at 16. The claims were denied initially on February 6, 2019, and upon reconsideration on July 2, 2019, resulting in Plaintiff's request for an administrative hearing on August 27, 2019. Id.

On June 23, 2020, a telephonic hearing was held before Administrative Law Judge ("ALJ") Eric Benham. Id. at 16, 27. Plaintiff and an impartial vocational expert ("VE"), Marcos Molinar, testified at the hearing. Id. at 16. In a written decision dated July 17, 2020, ALJ Benham determined that Plaintiff had not been under a disability, as defined in the Social Security Act, since September 1, 2015. Id. at 27. Plaintiff requested review by the Appeals Council. Id. at 1. In a letter dated November 23, 2020, the Appeals Council denied review of the ALJ's ruling, and the ALJ's decision therefore became the final decision of the Commissioner. Id. at 1-3.

On January 15, 2021, Plaintiff filed the instant action seeking judicial review by the federal district court. ECF No. 1. On April 11, 2022, Plaintiff filed a Motion for Summary Judgment alleging that the ALJ "failed to properly evaluate Dr. Brazinsky's opinion" and, therefore, the ALJ's RFC lacks the support of substantial evidence. Mot. at 3-13. Defendant filed a timely Cross-Motion for Summary Judgment and Opposition to Plaintiff's Motion for Summary Judgment asserting that the "ALJ properly weighed the evidence, including (but not limited to) the medical-opinion evidence when evaluating Plaintiff's RFC." Oppo. at 5-8.

## ALJ's DECISION

On July 17, 2020, the ALJ issued a written decision in which he determined that Plaintiff was not disabled as defined in the Social Security Act. AR at 26. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity during the relevant time period (since September 1, 2015). Id. at 18. At step two, he considered all of Plaintiff's medical impairments and determined that the following impairment was "severe" as defined in the Regulations: "chronic refractory cough (20 CFR 404.1520(c))." Id. At step three, the ALJ found that Plaintiff's medically determinable impairments or combination of impairments did not meet or medically equal the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526). Id. at 19. At step four, the ALJ considered Plaintiff's severe

impairment and determined that her residual functional capacity ("RFC") permitted her

> to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant can concentrate on simple work. The claimant's contact with the general public, or co-workers should be limited to occasional.

Id. at 20. The ALJ found that while Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms;" Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." Id. at 21. The ALJ further determined that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. Id. at 25-26.

## STANDARD OF REVIEW

Section 405(g) of the Social Security Act permits unsuccessful applicants to seek judicial review of the Commissioner's final decision. 42 U.S.C. § 405(g). The scope of judicial review is limited in that a denial of benefits will not be disturbed if it is supported by substantial evidence and contains no legal error. Id.; see also Miner v. Berryhill, 722 Fed. Appx. 632, 633 (9th Cir. 2018) (We review the district court's decision de novo, disturbing the denial of benefits only if the decision "contains legal error or is not supported by substantial evidence.") (quoting Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008)).

Substantial evidence is "more than a mere scintilla but may be less than a preponderance." Ahearn v. Saul, 988 F.3d 1111, 1115 (9th Cir. 2021) (quoting Molina v. Astrue, 674 F.3d 1104, 1110–11 (9th Cir. 2012) (quotation marks and citations omitted), *superseded by regulation on other grounds*. It is relevant evidence that a reasonable person might accept as adequate to support a conclusion after considering the entire record. Id. See also Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019). "In determining whether the Commissioner's findings are supported by substantial evidence, [the court] must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the [ALJ's] conclusion." Laursen v. Barnhart, 127 Fed. Appx. 311 (9th Cir. 2005) (quoting Reddick v. Chater,

157 F.3d 715, 720 (9th Cir. 1998)).  Where the evidence can reasonably be construed to support more than one rational interpretation, the court must uphold the ALJ's decision.  See Ahearn, 988 F.3d at 1115 (citing Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001)).  This includes deferring to the ALJ's credibility determinations and resolutions of evidentiary conflicts.  Id. ("[t]he ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities," and "we reverse only if the ALJ's decision was not supported by substantial evidence in the record as a whole") (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995) and Molina, 674 F.3d 1110-1111).

Even if the reviewing court finds that substantial evidence supports the ALJ's conclusions, the court must set aside the decision if the ALJ failed to apply the proper legal standards in weighing the evidence and reaching his or her decision.  See Miner, 722 Fed. Appx. at 633.  Section 405(g) permits a court to enter judgment affirming, modifying, or reversing the Commissioner's decision.  42 U.S.C. § 405(g).  The reviewing court also may remand the matter to the Social Security Administration for further proceedings.  Id.

## DISCUSSION

Plaintiff argues that the ALJ's assessment of Plaintiff's RFC "[i]s a result of an impermissible rejection of the Dr. Brazinsky's opinion" and, therefore, "lacks the support of substantial evidence and is a result of legal error."  Mot. at 8.  Defendant contends that the ALJ "properly found that Dr. Brazinsky's opinion that Plaintiff could not perform simple tasks was unpersuasive because it was inconsistent with the medical evidence."  Oppo. at 8.

A. Relevant Medical Records

1. Dr. Shari Brazinsky

According to the records in the Administrative Record, Dr. Shari Brazinsky treated Plaintiff from 2014-2020 for problems related to her cough.  AR at 354-389, 400-423, 454-456, 454-461, 484-511, 574-599, 619, 674-677.  On February 27, 2020, Dr. Brazinsky wrote a letter stating that Plaintiff recently enrolled in a clinical research study for her Chronic Refractory Cough and was monitored for twenty-four hours.  Id. at 71, 619.  The results showed that Plaintiff coughed 2,417 times while she was awake and averaged 141.79 coughs per hour.  Id.

Dr. Brazinsky completed a Physical Residual Functional Capacity Questionnaire for Plaintiff on May 19, 2020. Id. at 61-69, 674-677. Dr. Brazinsky found that Plaintiff was not a malingerer and that her symptoms could be expected to last at least twelve months. Id. at 63, 674. She also concluded that Plaintiff's symptoms were severe enough to constantly interfere with her attention and concentration, Plaintiff would need a job that permitted her to shift positions at will from sitting, standing, or walking, and Plaintiff would sometimes need to take unscheduled breaks during an eight-hour workday. Id. at 67, 675-676. Dr. Brazinsky further found that Plaintiff could frequently carry fifty pounds or less, look down, turn her head right or left, look up, hold her head in a static position, twist, stoop (bend), crouch/squat, climb ladders, and climb stairs. Id. at 67, 676. Finally, Dr. Brazinsky concluded that Plaintiff did not have good days and bad days as all of her days were bad ones and that Plaintiff was likely to never be absent from work as a result of her impairment or treatment. Id. at 69, 677.

### 2. Dr. F. Kalmar

State Agency Consultant, Dr. F. Kalmar, reviewed Plaintiff's medical records on January 28, 2019 and concluded that Plaintiff could occasionally lift or carry twenty pounds and frequently lift or carry ten pounds and sit, stand, or walk six hours out of an eight hour day. Id. at 132-134. Dr. Kalmar also found that Plaintiff had unlimited push/pull limitations, postural limitations including occasional climbing of ramps, stairs, ladders, ropes, and scaffolds and occasional balancing, stooping, kneeling, crouching, and crawling. Id. Dr. Kalmar concluded that Plaintiff had no manipulative, visual, or communicative limitations, but did have environmental limitations requiring that she avoid concentrated exposure to extreme cold, heat, or hazards (machinery, heights, etc), and vibration and avoid even moderate exposure to fumes, odors, dusts, gases, poor violation, etc. Id. Dr. Kalmar did not find Plaintiff to be limited as to wetness, noise, or vibration. Id.

### 3. Dr. Leonard H. Naiman

State Agency Consultant, Dr. Leonard H. Naiman, reviewed Plaintiff's medical records on July 1, 2019 and concluded that Plaintiff could occasionally lift or carry twenty pounds and frequently lift or carry ten pounds and sit, stand, or walk six hours out of an eight hour day. Id.

at 144-147.  Dr. Naiman also found that Plaintiff had unlimited push/pull limitations, postural limitations including occasional climbing of ramps and stairs, occasional balancing, stooping, kneeling, crouching, and crawling, and no climbing ladders, ropes, or scaffolds.  Id.  Dr. Naiman concluded that Plaintiff had no manipulative, visual, or communicative limitations, but did have environmental limitations requiring that she avoid concentrated exposure to extreme cold, heat, or hazards (machinery, heights, etc), wetness, and humidity, and avoid even moderate exposure fumes, odors, dusts, gases, poor violation, etc.  Id.  Dr. Naiman did not find Plaintiff to be limited as to noise, and vibration.  Id.

  B. Legal Standard

  Because Plaintiff filed for disability after March 27, 2017, the Social Security Administration's 2017 revised regulations governing the consideration of medical opinions apply.  See 20 C.F.R. § 404.1520c (2017).  Pursuant to the revised regulations, ALJs no longer have to give controlling weight to any medical opinions or prior administrative findings.  Id. § 404.1520c(a) ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources.").  Now, ALJs must focus on the persuasiveness of the medical opinions and prior administrative records.  Id.  In assessing the persuasiveness, ALJs will focus on supportability and consistency.  Id.  For supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be."  Id. at § 404.1520c(c)(1).  Similarly, for consistency, "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."  Id. at § 404.1520c(c)(2).

  "The Ninth Circuit has not yet interpreted the revised regulations because appeals of ALJ decisions applying these regulations have just recently been considered by district courts. It is clear, however, that the Commissioner's new regulations require the ALJ to explain his or

her reasoning and to specifically address how he or she considered the supportability and consistency of the medical opinion." Teresa G. v. Kijakazi, 2022 WL 298367, at *3 (S.D. Cal., Feb. 1, 2022) (citing 404.1520c(b)(2); P.H. v. Saul, 2021 WL 965330, at *3 (N.D. Cal. Mar. 15, 2021) ("Although the regulations eliminate the 'physician hierarchy,' deference to specific medical opinions, and assigning 'weight' to a medical opinion, the ALJ must still 'articulate how [he/she] considered the medical opinions' and 'how persuasive [he/she] find[s] all of the medical opinions.") (citation omitted); and Carolyn M.D. v. Kijakazi, 2021 WL 6135322, at *5 (C.D. Cal. Dec. 28, 2021) ("As always, the ALJ's reasoning must be free of legal error and supported by substantial evidence.") (citing Ford, 950 F.3d at 115)).

    C.    <u>Analysis</u>

Dr. Brazinsky found that Plaintiff's symptoms were severe enough to constantly interfere with her attention and concentration and Plaintiff would need a job that permitted her to shift positions at will from sitting, standing, or walking. She also found that Plaintiff (1) would sometimes need to take unscheduled breaks during an eight-hour workday, (2) did not have exertional limitations, (3) did not have good days and bad days as all of her days were bad ones, and (4) was likely to never be absent from work as a result of her impairment or treatment. Id. at 67-69, 675-677.

With respect to Dr. Brazinsky, the ALJ concluded that

> Shari Brazinsky, M.D., the claimant's primary care physician, provided a Physical Residual Functional Capacity Questionnaire dated May 19, 2020, and opined the claimant had no exertional limitations, but would require the ability to shift positions from sitting, standing, or walking at will, and would need to take unscheduled breaks due to her cough (Ex. 11F). Dr. Brazinsky further opined the claimant's cough would constantly interfere with her attention and concentration to perform even simple work tasks (Id.). Based upon the evidence, this opinion is generally persuasive. Dr. Brazinsky's opinion that the claimant has no exertional limitations is consistent with her treatment of the claimant which documented generally unremarkable physical examinations except for the claimant's cough with deep breathing, as well as normal pulmonary function tests and normal bronchoscopies, suggesting that the claimant is able to perform work at all

exertional levels (Exs. 1F/29; 2F/4, 12; 3F/6; 4F/18; 7F/14, 21). Conversely, while the undersigned finds the claimant's cough would interfere with her ability to perform complex and detailed tasks, the opinion that it would interfere with the claimant's ability to perform simple tasks is not persuasive. This opinion is inconsistent with mental status examinations that documented intact memory for recent and remote events, orientation in all spheres, and no acute distress (Exs. 1F/6; 6F/8; 9F/11), suggesting the claimant is capable of performing simple work and should have no more than occasional interaction with co-workers to avoid disrupting their concentration. Turning to supportability, Dr. Brazinsky relied on her treating relationship with the claimant, including a cough monitor that measured 142 coughs per hour and 2,417 coughs per day, and medication side effects including drowsiness. This supporting explanation partially aligns with the evidence of record. Accordingly, the undersigned finds this opinion persuasive.

Id. at 24-25.

Plaintiff argues that the ALJ erred by relying on Plaintiff's mental status examinations as a reason for discounting Dr. Brazinsky's conclusion that Plaintiff's condition would interfere with her ability to perform simple detailed tasks. Mot. at 8-9. Plaintiff argues that the ALJ cannot rely on mental status examinations to discount the symptoms from Plaintiff's physical condition. Id. at 8. Plaintiff also argues that the ALJ has improperly assessed Plaintiff's RFC without the support of a physician's opinion. Id. at 9-10. Finally, Plaintiff argues that the ALJ failed to explain his rejection of Dr. Brazinsky's finding that Plaintiff will need unscheduled breaks and the ability to shift at will. Id. at 10.

Defendant contends that the ALJ is not required to rely on a medical opinion when assessing a plaintiff's RFC. Oppo. at 7. Defendant further argues that the ALJ properly found that Dr. Brazinsky's opinion was unpersuasive where it was not consistent with the medical evidence. Id. at 8. Defendant does not address Plaintiff's arguments regarding the ALJ's failure to address Dr. Brazinsky's finding that Plaintiff needed unscheduled breaks and the ability to shift at will. Oppo.

1. The ALJ's Analysis of Dr. Brazinsky's Medical Opinion

The ALJ assessed the persuasiveness of Dr. Brazinsky's medical opinion and while he found that it was generally persuasive, he did not agree with all of her findings. Id. at 24-25.

The ALJ addressed the two most important factors when determining persuasiveness, supportability and consistency. Id. The ALJ found that Dr. Brazinsky's conclusion that Plaintiff was unable to perform even simple work tasks because coughing would interfere with her attention and concentration was inconsistent with Plaintiff's unremarkable mental status examinations and therefore, not persuasive. Id. The more consistent a medical opinion is with the evidence from other medical sources and nonmedical sources, the more persuasive the medical opinion will be. See 20 C.F.R. § 404.1520c(c)(2). In support, the ALJ cited to three medical records noting that Plaintiff showed "no acute distress" and "was alert and oriented x3" [id. at 25, 519, 611] and describing her mental status as "[j]udgment insight are appropriate for age. Oriented to time, place, and person. Intact for recent and remote events. No depression, anxiety, or agitation" [id. at 25, 347]. The ALJ concluded that Plaintiff was able to perform simple work with no more than occasional interaction with co-workers to avoid disrupting their concentration. Id. at 25.

With respect to supportability, the ALJ noted that Dr. Brazinsky relied on her treating relationship with Plaintiff and found that Dr. Brazinsky's conclusion was only partially supported by the cough study that measured 142 coughs per hour and 2417 coughs per day and the side effects of Plaintiff's medication related to drowsiness. Id. at 25. The more objective, relevant medical evidence and supporting explanations provided by a medical source to support a doctor's opinions, the more persuasive the medical opinions will be. See 20 C.F.R. § 404.1520c(c)(1). Here, Dr. Brazinsky's medical opinion was based on her treatment history with Plaintiff and the results of Plaintiff's cough study with Dr. Bruce M. Penner. Id. at 25. The ALJ considered Dr. Brazinsky's treatment history with Plaintiff and noted that the medical records showed "generally unremarkable physical examinations except for the claimant's cough with deep breathing, suggesting that the claimant is able to perform work at all exertional levels, as well as normal

pulmonary function tests and normal bronchoscopies, (Exs. 1F/29[1]; 2F/4[2], 12[3]; 3F/6[4]; 4F/18[5]; 7F/14[6], 21[7]).” Id. at 24.  Thus, the ALJ interpreted the medical evidence to mean that Plaintiff was capable of performing a full range of work at all exertional levels.

        a.    <u>Failure to Address Dr. Brazinsky's Findings Regarding Unscheduled Breaks and Shifting at Will</u>

While acknowledging that the ALJ correctly assessed most of Dr. Brazinsky's findings, Plaintiff argues the ALJ's opinion is improperly "bereft of any articulated rationale for rejecting the findings that [Plaintiff] would need unscheduled breaks and a job that permits shifting at will" which does not allow for meaningful review.  Mot. at 10.  Defendant fails to address this argument [see Oppo.] and the Court finds Plaintiff's argument is correct.  The ALJ failed to address Dr. Brazinsky's conclusion that Plaintiff would require unscheduled breaks and the ability to shift positions at will.  AR.  The ALJ summarized Dr. Brazinsky's findings, including her findings

---

[1] April 10, 2015 chart noting that Plaintiff's lungs were "[c]lear to auscultation and percussion, without rales, rhonchi, or wheezes. [D]idn't cough with deep breathing." AR at 370.

[2] May 5, 2017 chart noting that Plaintiff's lungs were "[c]lear to auscultation and percussion, without rales, rhonchi, or wheezes. [D]idn't cough with deep breathing." AR at 401.

[3] April 15, 2017 chart noting that Plaintiff's lungs were "[c]lear to auscultation and percussion, without rales, rhonchi, or wheezes. [C]ough[s] with deep breathing." AR at 409.

[4] October 26, 2018 office visit noting that Plaintiff "has [had] two bronchoscopies. The results were normal." AR at 429.

[5] April 16, 2018 Pulmonary Function Report stating "NORMAL SPIROMETRIC VALUES indicate the absence of any significant degree of obstructive pulmonary impairment and/or restrictive ventilatory defect." AR at 450.

[6] August 28, 2019 chart stating that Plaintiff's lungs were "[c]lear to auscultation and percussion, without rales, rhonchi, or wheezes, coughs, with deep breathing." AR at 582.

[7] August 28 2019 Pulmonary Function Report stating "Possible EARLY OBSTRUCTIVE PULMONARY IMPAIRMENT. This is suggested by the reduced FEF 25-75 with a normal FVC and FEVI. This finding can be due to a mild degree of small airway disease and/or the earliest stages of emphysema. This may be reversible in nature; therefore, REPEAT TESTING FOLLOWING BRONCHODILATOR ADMINISTRATION IS RECOMMENDED." AR at 589.

regarding shifting positions at will and taking unscheduled breaks, however, the ALJ does not provide any discussion of these findings, nor does he include any such limitations in his RFC determination or confirm that the jobs that exist in significant numbers in the national economy that he finds Plaintiff can perform account for these limitations.  Id.

By ignoring Dr. Brazinsky's findings of limitations regarding Plaintiff's need to shift at will and take unscheduled breaks, the ALJ erred.  Because there is no evidence of possible jobs, the error is not harmless.[8]  The ALJ should have evaluated the persuasiveness of Dr. Brazinsky's opinion regarding unscheduled breaks and shifting at will.  See 20 C.F.R. § 404.1520(c).  While ALJ's no longer need to provide specific and legitimate reasons for discounting the opinion of a treating physician[9], they must still explain their reasoning and specifically address how they analyzed the supportability and consistency of the medical opinion.  Id. § 404.1520c(b)(2); see also Teresa G., 2022 WL 298367, at *3 (citing P.H. v. Saul, 2021 WL 965330, at *3 (N.D. Cal. Mar. 15, 2021) ("the ALJ must still 'articulate how [he/she] considered the medical opinions' and

---

[8] Harmless error occurs if the error is inconsequential to the ultimate non-disability determination.  See Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006); see also Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1055-56 (9th Cir. 2006).  Errors that do not affect the ultimate result are harmless.  See Parra v. Astrue, 481 F.3d 742, 747 (9th Cir. 2007).  An ALJ's error may be deemed harmless if, in light of the other reasons supporting the overall finding, it can be concluded that the error did not "affect[ ] the ALJ's conclusion."  Batson v. Comm'r, Soc. Sec. Admin., 359 F.3d 1190, 1197 (9th Cir. 2004).

[9] Social Security applications filed before March 27, 2021 distinguish among three types of physicians: (1) treating physicians; (2) examining physicians; and (3) non-examining physicians. 20 C.F.R. §§ 404.1526(c),(e); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996).  While an ALJ is not bound by the opinion of a treating physician, the opinion of a treating doctor is generally given more weight than opinions of doctors who do not treat the claimant.  See Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1222 (9th Cir. 2010) (citing Lester, 81 F.3d at 830-31 (9th Cir. 1995)). If a treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons supported by substantial evidence in the record. Id. When the treating doctor's opinion is contradicted by the opinion of another doctor, the ALJ may properly reject the treating doctor's opinion only by providing "specific and legitimate reasons" supported by substantial evidence in the record for doing so. Id.; see also Fennell v. Berryhill, 721 Fed. Appx. 652, 654 (9th Cir. 2018) (quoting Bayliss v. Barnhart, 427 F3d 1211, 1217 (9th Cir. 200) ("[A]n ALJ need not accept the opinion of a doctor if that opinion is brief, conclusory, and inadequately supported by clinical findings.").

'how persuasive [he/she] find[s] all of the medical opinions.") (citation omitted)).  Here, the ALJ failed to do so with respect to Dr. Brazinsky's findings on unscheduled breaks and shifting at will and that failure warrants remand.

    b. <u>Mental Symptoms Stemming from Physical Condition not Mental Impairment</u>

Plaintiff also argues that the ALJ erred by relying on mental status examinations to discount symptoms related to Plaintiff's physical condition.  Mot. at 8.  Defendant contends that the "ALJ properly found that Dr. Brazinsky's opinion that Plaintiff could not perform simple tasks was unpersuasive because it was inconsistent with the medical evidence."  Oppo. at 8.  Plaintiff cites to <u>Kelly Sue S. v. Kijakazi</u>, 2021 WL 5921350, at *11 (D. Idaho, Dec. 14, 2021)  in support of her argument.  Mot. at 8-9.  In <u>Kelly Sue S.</u>, the ALJ did not find Plaintiff's allegations of impaired concentration to be credible due in part to the lack of an associated diagnosis from an acceptable medical source.  <u>Kelly Sue S.</u>, 2021 WL 5921350 at *10.  The plaintiff in <u>Kelly Sue S.</u> alleged that her impaired concentration was due to back pain and not a mental impairment.  <u>Id.</u>  The court ruled that the ALJ erred because he could not "rely upon the lack of a medical diagnosis for any mental impairments to discredit Petitioner's testimony that her back pain causes impaired concentration."  <u>Id.</u>  Defendant does not address <u>Kelly Sue S.</u> or provide any authority opposing the case or distinguishing the current matter.  Oppo.  Because the Court is remanding the matter and Defendant has not addressed the issue, the argument should be considered on remand.

    c. <u>Lack of a Medical Opinion</u>

Plaintiff's final argument is that the ALJ improperly assessed Plaintiff's RFC without the support of a physician's opinion.  Mot. at 9-10.  Plaintiff argues that "the ALJ's conclusion that coughing 142 times supports a limitation to simple work and occasional contact with the general public, or co-workers but [is] inconsistent with greater limitations with respect to concentration and attention is nothing more than the ALJ's lay medical opinion."  <u>Id.</u> at 9.  Defendant contends that the RFC "does not need to be based on medical opinions."  Oppo. at 7 (citing 20 C.F.R. 404.1546).

An RFC assessment is the most a plaintiff can do despite their limitations, and this assessment is based upon all relevant evidence in the record including medical records, medical source statements, and symptom testimony. See 20 C.F.R. § 404.1545(a)(1); SSR 96-8p. The responsibility for making this assessment is within the purview of the administrative law judge. See 20 C.F.R. § 404.1546(c); see also Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001) (citing 20 C.F.R. § 404.1545). "SSR 96–8p provides a blueprint for what an RFC assessment must contain in all cases in which symptoms are alleged: (1) a thorough discussion and analysis of the objective medical and other evidence, including the individual's complaints of pain and other symptoms and the adjudicator's personal observations, if appropriate; (2) a resolution of any inconsistencies in the evidence as a whole; and (3) a logical explanation of the effects of symptoms, including pain, on the individual's ability to work." Shafer v. Barnhart, 120 Fed. Appx. 688, 698 (9th Cir. 2005). Where the "record contains conflicting medical evidence, the ALJ is charged with determining credibility and resolving conflicts." Benton v. Barnhart, 331 F.3d 1030, 1040 (9th Cir. 2003). While an ALJ determines a plaintiff's RFC, "an ALJ is not allowed to make medical judgments, but only legal judgments based on medical evidence. Barring a few exceptions, an ALJ must have a doctor's opinion of a claimant's functional capacity in order for there to be substantial evidence supporting the decision." Duarte v. Saul, 2020 WL 5257597, at *5 (E.D. Cal., Sept. 3, 2020) (citing Day v. Weinberger, 522 F.2d 1154, 1156 (9th Cir. 1975) and Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 17 (1st Cir. 1996) ("With few exceptions, ... an ALJ, as a layperson, is not qualified to interpret raw data in a medical record.")).

Here, the ALJ rejected the medical findings of State Agency Consultants F. Kalmar and L. Naiman. AR at 23-24. Both doctors found exertional and environmental limitations and no mental limitations. Id. at 132-134, 144-147. The ALJ found Drs. Kalmar and Naiman's opinions to be unpersuasive as they were not consistent with the findings of Plaintiff's treating doctor who found that Plaintiff had no exertional limitations nor with Plaintiff's testimony and treatment notes that there were no known triggers for her cough. Id. at 23-24. Because the ALJ found the Agency Consultants' opinions unpersuasive, the only medical opinion regarding Plaintiff's

limitations came from Dr. Brazinsky. In determining Plaintiff's RFC, the ALJ found that Plaintiff could perform simple work with no more than occasional interaction with co-workers and the general public. Id. at 23-24. In reaching this decision, the ALJ rejected Dr. Brazinsky's opinion that Plaintiff's cough interfered with her attention and concentration and prevented her from performing even simple tasks. The ALJ did not identify any expert or doctor who examined Plaintiff or reviewed her medical records relating to her cough and opined that Plaintiff was capable of performing simple work with limited interaction with co-workers and the public. Instead, the ALJ appears to interpret Plaintiff's mental status examinations himself and concludes that the mental status findings establish that Plaintiff has the ability to perform simple tasks.[10] Id.

While Defendant is correct that the RFC is an administrative finding and not a medical finding, an ALJ still needs medical support for his RFC finding. Here, where the ALJ rejected the opinion of the only doctor who opined on a functional limitation by interpreting mental status results, the ALJ improperly acted as his own medical expert which was an error. See Javier A. G. v. Saul, 2020 WL 6940042, at *9 (C.D. Cal., Nov. 25, 2020) ("an ALJ may not substitute his or her lay interpretation of raw medical data in making an RFC assessment in lieu of a qualified expert's medical opinion").[11] Accordingly, the ALJ's finding constituted legal error and was not

---

[10] As discussed above, Plaintiff provided case law indicating that mental status findings cannot be used to contradict physical symptoms that impair a plaintiff's ability to work and Defendant failed to rebut the argument or provide contradictory law.

[11] Citing Penny v. Sullivan, 2 F.3d 953, 958 (9th Cir. 1993) ("Without a personal medical evaluation it is almost impossible to assess the residual functional capacity of any individual."); Banks v. Barnhart, 434 F. Supp. 2d 800, 805 (C.D. Cal. 2006) ("An ALJ cannot arbitrarily substitute his own judgment for competent medical opinion ... and ... must not succumb to the temptation to play doctor and make ... independent medical findings.") (quotations omitted); Tagger v. Astrue, 536 F. Supp. 2d 1170, 1181 (C.D. Cal. 2008) ("[An] ALJ's determination or finding must be supported by medical evidence, particularly the opinion of a treating or an examining physician.") (citations and internal quotation marks omitted); Brawders v. Astrue, 793 F. Supp. 2d 485, 493 (D. Mass. 2011) (" '[W]here an ALJ reaches conclusions about [a] claimant's physical exertional capacity without any assessment of residual functional capacity by a physician, the ALJ's conclusions are not supported by substantial evidence and it is necessary to remand for the taking of further functional evidence.'") (quoting Perez v. Sec. of Health and

supported by substantial evidence. See De Gutierrez v. Saul, 2020 WL 5701019, at *6 (E.D. Cal. Sep. 24, 2020) ("Without a medical opinion to support the conclusion that Plaintiff was able to perform medium work and could lift and carry fifty pounds occasionally and twenty-five pounds frequently, stand and/or work for eight hours in an eight-hour workday, sit for eight hours in an eight-hour workday, and was limited to simple routine tasks, the ALJ's RFC lacks the support of substantial evidence."); and Goolsby v. Berryhill, 2017 WL 1090162, at *8 (E.D. Cal. Mar. 22, 2017) (ALJ erred in including "simple routine tasks" in RFC when the medical record did not contain medical opinions supporting this limitation).

## REMAND v. REVERSAL

"The decision whether to remand for further proceedings or simply to award benefits is within the discretion of [the] court." McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989) (internal citation omitted). "Remand for further administrative proceedings is appropriate if enhancement of the record would be useful." Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004). On the other hand, if the record has been fully developed such that further administrative proceedings would serve no purpose, "the district court should remand for an immediate award of benefits." Id. "More specifically, the district court should credit evidence that was rejected during the administrative process and remand for an immediate award of benefits if (1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited." Id. (citing Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir. 2000)). The Ninth Circuit has not definitely stated whether the "credit-as-true" rule is mandatory or discretionary. See Vasquez v. Astrue, 572 F.3d 586, 593 (9th Cir. 2009) (acknowledging that there is a split of authority in the Circuit, but declining to resolve the conflict); Luna v. Astrue, 623 F.3d 1032, 1035 (9th Cir. 2010) (finding rule is not mandatory where "there are 'outstanding issues that must be resolved before a proper disability determination can be made'" (internal citation

---

Human Servs., 958 F.2d 445, 446 (1st Cir. 1999)).

omitted)); Shilts v. Astrue, 400 F. App'x 183, 184-85 (9th Cir. Oct. 18, 2010) (explaining that "evidence should be credited as true and an action remanded for an immediate award of benefits only if [the Benecke requirements are satisfied]" (internal citation omitted)).

      Here, because the Court finds that the ALJ failed to address Dr. Brazinsky's conclusions regarding Plaintiff's need for unscheduled breaks and the ability to shift at will, and failed to provide an RFC supported by substantial evidence, further administrative proceedings to develop the record would be useful and is appropriate. See Benecke, 379 F.3d at 593. Similarly, an immediate award of benefits is not appropriate because there are outstanding issues that must be resolved before a determination of disability can be made. Id. Therefore, this Court **REVERSES** the ALJ's decision and **REMANDS** for further proceedings to address the errors noted in this Order.

      **IT IS SO ORDERED**.

Dated: 8/15/2022

Hon. Barbara L. Major
United States Magistrate Judge